**No. 22-55823**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

MERRY RUSSITTI DIAZ and KATER PEREZ,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

WESTCO CHEMICALS, INC.; ALAN ZWILLINGER, erroneously
sued as Ezekiel Alan Zwillinger; STEVEN ZWILLINGER,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 2:20-cv-02070-ODW-AGR
Hon. Otis D. Wright II, District Judge

_____

**APPELLEES' ANSWERING BRIEF**

_____

Joseph C. Faucher
Brian D. Murray
Trucker ✦ Huss, APC
15760 Ventura Blvd., Suite 910
Los Angeles, California 91436
(213) 537-1016

*Attorneys for Appellees*
WESTCO CHEMICALS, INC., ALAN
ZWILLINGER and STEVEN
ZWILLINGER

## CORPORATE DISCLOSURE STATEMENT
### (Federal Rule of Appellate Procedure 26.1)

Appellee WESTCO CHEMICALS, INC. has no parent corporation and no publicly held corporation holds 10% or more of its stock.

# TABLE OF CONTENTS

<u>Page No.</u>

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................1

STATEMENT OF THE CASE...............................................................2

I.     STATEMENT OF FACTS ...............................................................2

     A.     Introduction ........................................................................2

     B.     Westco Chemicals, Inc. And Its Defined Benefit Pension Plan ..........3

           1.     The 2005 Plan Document...........................................3
           2.     The 2011 Restated Plan Document............................4

     C.     Westco's Intended Freeze Of Plan Benefit Accruals, And The Failure Of The Plan's Former Third-Party Administrator To Take Steps Necessary To Implement The Freeze .........................4

     D.     The Notice Of Eligibility To Terminated Participants And Commencement Of Benefits To Plaintiff Diaz...........................7

     E.     The Plan's Submission Under The IRS's Voluntary Closing Agreement Program, And Proposed Correction Of Operational Errors .........................................................................7

           1.     Failures To Follow The Plan's Terms .......................9
           2.     Failure To Comply With Code § 401(A)(26).........10
           3.     Incorrect Required Minimum Distributions ............11
           4.     Failure To Timely Amend The Plan .......................11
           5.     Failure To Comply With Code § 436 ......................12

     F.     The Plan's Current Funding Status .....................................13

II.     RELEVANT PROCEDURAL HISTORY ....................................13

III.     SUMMARY OF ARGUMENT....................................................14

i

IV.    ARGUMENT ...................................................................................16

     A.    Standard Of Review .........................................................16

     B.    Appellants Lack Standing To Pursue Their Claims, Because
         It Is Uncontroverted That The Plan Has Paid All Benefits
         Due To Date, And Is Not At Imminent Risk of Default ....................16

     C.    The Plan Provides "Meaningful Benefits" To Participants ...............21

     D.    There Is No Private Right of Action For A Plan's Alleged
         Failure to Satisfy the Qualification Requirements of IRC § 401 ........24

     E.    Plaintiff/Appellant Kater Perez's Claims Were Not Brought
         For The Benefit Of The Plan................................................26

     F.    The District Court Properly Found The Evidence Presented
         By Appellees To Be Uncontroverted ...................................28

     G.    The Court Should Not Entertain Appellants' New Argument
         That They Have Standing Because They Seek Equitable Relief,
         But Even If The Court Considers The Argument, It Fails.................30

V.    CONCLUSION............................................................................37

STATEMENT OF RELATED CASES ..................................................38

FORM 8 - CERTIFICATE OF COMPLIANCE FOR BRIEFS.............................39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*$133,420.00 in U.S. Currency*,
  672 F.3d 629 (9th Cir. 2012 ..................................................................16

*Alas v. AT&T Servs.*,
  No. 217CV8106VAPRAOX, 2021 WL 4893372
  (C.D. Cal. Sept. 28, 2021) ......................................................................35

*Carmen v. San Francisco Unified Sch. Dist.*,
  237 F.3d 1026 (9th Cir. 2001) ...............................................................30

*Cent. States Southeast & Southwest Areas Health & Welfare Fund*
  *v. Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005) ...................................................................36

*Conkright v. Frommert*,
  559 U.S. 506 (2010) ................................................................................26

*Douglas v. Cty. of Riverside*,
  2015 WL 13918905 (C.D. Cal. 2015) .....................................................22

*Ellington v. House*,
  2019 WL 4196319 (C.D. Cal. July 23, 2019) .........................................29

*Hollingsworth v. Perry*,
  558 U.S. 183, 191 (2010) ........................................................................29

*Horvath v. Keystone Health Plan East, Inc.*,
  333 F.3d 450 (3d Cir. 2003) ...................................................................36

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) ..................................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................16

*Lux EAP, LLC v. Bruner*,
  2022 WL 2168877 (C.D. Cal Apr. 11, 2022) .........................................30

*In re Moses*,
  215 B.R. 27 (B.A.P. 9th Cir. 1997),
  *aff'd*, 167 F.3d 470 (9th Cir. 1999) ........................................................25

*Navajo Nation v. U.S. Forest Serv.*,
  535 F.3d 1058 (9th Cir. 2008) ................................................................32

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) .....................................................33, 34, 36

*Perrow v. D.C.*,
  435 F. Supp. 3d 9 (D.D.C. 2020) ..........................................................29

*Robins v. Spokeo, Inc.*,
  867 F.3d 1108 (9th Cir. 2017) ..............................................33, 34, 36

*Romain v. Shear*,
  799 F.2d 1416 (9th Cir. 1986) ............................................................31

*Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*,
  332 F.3d 1198 (9th Cir. 2003) .......................................................34, 35

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ............................................................28

*Thole v. U.S. Bank N.A.*,
  140 S.Ct. 1615 (2020)...................... 3, 14, 16, 17, 18, 19, 20, 35, 36

*Trenton v. Scott Paper Co.*,
  832 F.2d 806 (3d Cir. 1987) ...............................................................17

*Wells v. California Physicians' Serv.*,
  No. C05-01229CRB, 2007 WL926490 (N.D. Cal. Mar. 26, 2007) ............35, 36

*Werner v. Evolve Media, LLC*,
  2020 WL 3213808 (C.D. Cal. Apr. 28, 2020) ...................................30

*Wit v. United Behavioral Health*,
  2022 WL 850647 (9th Cir. 2022) ................................................33, 36

*In re Witwer*,
  148 B.R. 930 (Bankr. C.D. Cal 1992), *aff'd,* 163 B.R. 614 (B.A.P.
  9th Cir. 1994)..............................................................................8, 25

*Ziegler v. Connecticut Gen. Life Ins. Co.*,
  916 F.2d 548 (9th Cir. 1990) .......................................................32, 34

## Federal Statutes

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 2071 ....................................................................................29

Internal Revenue Code

Internal Revenue Code § 204(h) (26 U.S.C. § 1054(h).)......................................5, 7

    Internal Revenue Code § 401...........................................................*passim*
    Internal Revenue Code § 403(a) ...................................................................8
    Internal Revenue Code § 403(b) ...................................................................8
    Internal Revenue Code § 408(k) ...................................................................8
    Internal Revenue Code § 408(p) ...................................................................8
    Internal Revenue Code § 436........................................................................12

Employee Retirement Income Security Act of 1974 ("ERISA")

    ERISA § 29 U.S.C. § 1001, *et seq.* .....................................................................1
    ERISA § 404 (29 U.S.C. § 1104) .............................................................26, 27
    ERISA § 404(a)(1)(B) (29 U.S.C. § 1104(a)(1)(B)) ...................................26, 27
    ERISA § 409 (29 U.S.C. § 1109(a))..........................................................27, 28, 31
    ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) ............................................27
    ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)) ..................................26, 27, 28, 31

## Federal Regulations

26 C.F.R. § 1.401(a)(26)-3(c)(2) ...............................................................................23

## Federal Rules

Fed. R. App. Proc. 4(a)(1)(A) ...................................................................................1

Fed. R. App. Proc. 28(b)(2) ......................................................................................1

Fed. R. App. Proc. 28(b)(3) ......................................................................................2

Fed. R. Civ. Proc. 56(e) ...........................................................................................29

## Other Authorities

Local Civil Rule 56-3 of the U.S. District Court
    for the Central District of California ...............................................................29

## STATEMENT OF JURISDICTION
### (Circuit Rule 28-2)

The district court had federal question jurisdiction of this matter pursuant to 28 U.S.C. § 1331, pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, because the complaint asserted claims involving alleged breaches of fiduciary duty with respect to an employer-sponsored employee benefit plan. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291, because it arises from a judgment entered by the United States District Court for the Central District of California on August 18, 2022 following an order granting summary judgment in favor of Defendants/Appellees. Plaintiffs/Appellants filed a Notice of Appeal of the Judgment entered in the District Court proceedings on September 6, 2022. The Notice of Appeal was timely pursuant to Fed. R. App. Proc. 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW
### (Fed. R. App. Proc. 28(b)(2))

1.      Did Appellees demonstrate that there were no genuine issues of disputed fact, and that they were entitled to summary judgment as a matter of law?

2.      Is the district court's entry of summary judgment in favor of Appellees supported by any ground in the record?

## STATEMENT OF THE CASE
## (Fed. R. App. Proc. 28(b)(3))

## I. STATEMENT OF FACTS

### A. __Introduction__

The District Court found the facts set forth in this section to be uncontroverted. (3-ER-876.)[1] Plaintiffs did not address any of those facts in their responding "Plaintiffs' Statement of Genuine Disputes" (3- ER-843-847). That alone justifies an order that the facts presented by Defendants are uncontroverted. But Appellants did not merely fail to respond to the uncontroverted facts presented by Defendants/Appellees. They also offered no evidence whatsoever to contradict any of those facts. Instead, the Opposition to the Motion for Summary Judgment relied largely on legal arguments rather than upon any genuine factual dispute. In several instances, Appellants' Opening Brief ("AOB") cites briefs they filed in the proceedings below – including a brief in support of their Motion for Class Certification – as support for the "facts" asserted in the AOB, rather than citing evidence presented to the court below.[2] The following facts, all supported by

---

[1] Appellants submitted Excerpts of Record ("ER") in support of their appeal. Citations in this brief to "[volume number]-ER-[page number]" are to the volume number and page number(s) of those Excerpts of Record. Citations to "SER" are to the Supplemental Excerpts of Record submitted by Appellees contemporaneously with this brief.

[2] For example, *see,* AOB p. 2, citing 1-ER-199 for the propositions that Defendants/Appellees did not fund the retirement plan at issue "as required by the Internal Revenue Service and ERISA," and "… never intended for the Pension Plan to be a legitimate pension plan that provides meaningful retirement benefits to their employees." That citation is to Appellees' Memorandum of Points and Authorities In Support of Motion for Class Certification.

declaration testimony and set forth in Appellees' Statement of Uncontroverted Facts and Conclusions of Law, remain uncontroverted.

### B. Westco Chemicals, Inc. And Its Defined Benefit Pension Plan

Westco Chemicals, Inc. ("Westco") is a family-owned business based in North Hollywood, California that supplies and distributes ingredients for the food, nutritional, industrial, pharmaceutical and personal care industries. Its shares are 100% owned by its founder, Alan Zwillinger, his wife Carole Zwillinger, and his adult children, Steven Zwillinger and Felicia Fallas. (2-ER-283, ¶ 2; 2-ER-798, ¶ 1.) Westco adopted the Westco Chemicals, Inc. Defined Benefit Pension Plan (the "Plan") effective October 1, 2005. (2-ER-283, ¶ 3; 2-ER-798, ¶ 2.) In addition to the Plan, Westco sponsors a 401(k) plan (the "401(k) Plan"), a form of *defined contribution* plan. (*Id.*)[3]

### 1. The 2005 Plan Document

The Plan is governed by a written document. The original 2005 Plan document outlined three distinct groups of participants and defined the benefits payable to each group. **Group 1** consisted of Alan Zwillinger, Carole Zwillinger, Jennifer Anderson, Gabriel Navarro and Adrian Holguin (the latter three of whom are not shareholders or principals of Westco), whose benefit was 5.5% of "Average Compensation for each Year of Benefit Service up to a maximum of ***twelve (18)***

---

[3] Defined benefit plan participants are entitled to a fixed benefit "regardless of the plan's value at any one moment and regardless of the investment decisions of the plan's fiduciaries." This differs from what happens in the defined contribution plan setting, in which, for example, imprudent investments by plan fiduciaries may adversely impact participants' account balances. *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615, 1618 (2020).

years of Benefit Service."[4] **Group 2** included Steven Zwillinger, Felicia Fallas, Florence Lent, Joseph Fallas, Seta Baghdasaryan, Juan Figueroa, Gina Pambuvkvhyan, Doreen Nelson and David Wohlgemuth. Their benefit amounted to 0.5% of Average Compensation for each Year of Benefit Service. **Group 3** included all other eligible employees not named above. Group 3 benefits were 0.1% of Average Compensation for each Year of Benefit Service. (2-ER- 283, ¶ 3; 2-ER-797-798, ¶ 3.)

### 2. The 2011 Restated Plan Document

Westco restated the Plan document effective October 1, 2011. (2-ER-284, ¶ 4; 2-ER-387-483.) The benefit groups referred to above remained the same. The restated Plan document clarified that Group 1 benefit accruals were limited to 12 Years (not 18) of Benefit Service. (2-ER-403.) However, the restated Plan document inadvertently included other typographical errors relative to the benefit accrual rates applicable to Groups 2 and 3, inaccurately reflecting their benefit accruals as .05% and .01% of Average Monthly Compensation (rather than .5% and .1%), respectively, as set forth in the original 2005 Plan document. (*Id.*) Those errors were also subsequently corrected. Appellants, however, disregard the undisputed fact that Westco corrected the error, notwithstanding that the issue was addressed in detail in the summary judgment motion briefing. They base their core argument on their resulting inaccurate presentation of the facts.

### C. Westco's Intended Freeze Of Plan Benefit Accruals, And The Failure Of The Plan's Former Third-Party Administrator To Take Steps Necessary To Implement The Freeze

For several years before 2017, a third-party administrator named Paul

---

[4] The bold and italicized language reflects a typographical error – the figure in parentheses should have been "12" rather than 18. That error was corrected in a subsequent, restated Plan document as discussed below.

4

Harder provided services for the Plan.[5] In 2010, Westco chose to freeze all further benefit accruals under the Plan. Steven Zwillinger believed, from 2010 until 2017, that the necessary steps to accomplish this were completed in 2010. (2-ER-285, ¶ 8.) Ordinarily, freezing benefit accruals entails amending the plan document and subsequently providing notice of the benefit freeze to the plan's participants in accordance with Internal Revenue Code ("Code") § 204(h) (26 U.S.C. § 1054(h).) (2-ER-490, ¶ 5.) Mr. Zwillinger justifiably believed this was done in 2010 – Paul Harder had confirmed it to the Plan's actuary, G. Neff McGhie, in a July 15, 2015 e-mail that stated "[p]lease remember that the plan was frozen (a total freeze) after the plan year ending Sept. 30, 2010." (2-ER-295, ¶ 9; 2-ER-449.) Contrary to Mr. Harder's assurances, however, the Plan was not properly amended to freeze benefits in 2010, and no notice of a benefit freeze was distributed to the Plan's participants as required by ERISA § 204(h).

From 2014 to 2017, Mr. Harder became less and less responsive to Westco's inquiries and communications. For example, it came to Westco's attention that Mr. Harder had failed to timely comply with filing requirements imposed upon defined benefit plan sponsors by the Pension Benefit Guaranty Corporation ("PBGC"), which resulted in the imposition of penalties upon Westco. By 2017, Mr. Harder had stopped responding entirely to e-mails and calls from Steven Zwillinger. On July 19, 2017 (long before Appellants filed their Complaint), Westco engaged a new third-party administration firm – Goldberg, Swedelson & Associates, Inc. ("GSA") – to assist Westco in the operation and administration of the Plan and the

---

[5] Mr. Harder's relationship to the Plan – the circumstances of which are undisputed - is integral to an understanding of the facts of the case. Appellees' briefing and evidence presented in the district court discussed Mr. Harder's role extensively. The AOB, however, is completely silent with respect to Mr. Harder, the services he provided (and did not provide), and the events that followed.

401(k) Plan. (2-ER-284, ¶ 6; 2-ER-438-446.) During that same time frame, Westco retained a law firm specializing in employee benefit plan matters – Ferenczy Benefits Law Center (the "Ferenczy Firm") – to assist Westco in rectifying the problems that arose on Mr. Harder's watch. The Ferenczy Firm helped Westco identify operational issues that arose during Mr. Harder's tenure, brought the Plan into compliance with all applicable Internal Revenue Service ("IRS") requirements, and addressed the PBGC premium payments that were delinquent because of Mr. Harder's failure to render timely, competent service. Alison Cohen, of the Ferenczy Firm, undertook primary responsibility for helping Westco correct the Plan's operational defects and executed a Declaration in support of the Motion for Summary Judgment. (2-ER-284-285, ¶ 7; 2-ER-490, ¶ 4.)

After GSA, Mr. McGhie and the Ferenczy Firm began rendering services to the Plan, Westco tried to locate a signed amendment freezing benefits in 2010. No signed amendment was located. (2-ER-285, ¶ 8.) Accordingly, Westco adopted an amendment to the Plan effective December 26, 2017, which provided that (1) no Employee or Eligible Employee (as those terms are defined in the Plan document) could become a newly eligible Participant in the Plan after December 27, 2017, (2) no benefits would accrue for any Plan Participant on or after December 27, 2017, and (3) no contribution would be made by Westco to the Plan after December 27, 2017, except to the extent necessary to satisfy any minimum funding obligation arising under the Plan before that date. (2-ER-285-286, ¶ 10; 2-ER-453.)[6] Westco then sent an e-mail to Plan participants on December 13, 2017, advising them that

---

[6] The IRS ultimately agreed to allow benefit accruals of Westco's owners to be frozen as of the originally intended 2010 date. That made practical sense: the owner-participants were always aware of the intended freeze, and freezing accruals relative to the owner-participants did no harm to the non-owners, who continued to accrue benefits during the period of time that it was presumed, incorrectly, that benefit accruals had been frozen in 2010.

the company had engaged an attorney and actuary to assist the company in working with government agencies that oversee retirement plans, and attaching a written notice advising the participants of the benefit freeze as required by ERISA § 204(h) (29 U.S.C. § 1054(h)). (2-ER-286, ¶ 11; 2-ER-455; 2-ER-458-59.)

### D. The Notice Of Eligibility To Terminated Participants And Commencement Of Benefits To Plaintiff Diaz

On July 31, 2019, Westco circulated a memorandum to terminated participants, including Plaintiff/Appellant Merry Russitti Diaz ("Ms. Diaz") regarding their eligibility to apply for benefits under the Plan. (2-ER-286, ¶ 12; 2-ER-461-462.) On August 19, 2019, Ms. Diaz submitted an "Application for Pension Benefits" under the Plan. (2-ER-286, ¶ 12; 2-ER-477-479.) Benefit payments in the monthly amount of $124.78 from the Plan commenced to Ms. Diaz on September 3, 2019. (2-ER-286, ¶ 13.) That is the amount owed to Ms. Diaz under the terms of the Plan. (2-ER-787, ¶ 8.)

### E. The Plan's Submission Under The IRS's Voluntary Closing Agreement Program, And Proposed Correction Of Operational Errors

After Westco retained the Ferenczy Firm, other operational errors involving the Plan's administration became apparent. Those errors flowed from Mr. Harder's failure to take the steps necessary to timely freeze Plan benefits in 2010.[7]

To address these operational issues, Westco, with the Ferenczy Firm's

---

[7] Appellants insist on referring to these operational errors as "breaches" or "fiduciary breaches," and contend that Appellees have admitted "fiduciary breaches." But Appellees admit no such thing, and the District Court correctly recognized the distinction between failures to comply with retirement plan qualification requirements and violations of ERISA's fiduciary liability provisions. (3-ER-886, lns. 3-10.)

7

assistance, submitted a filing to the IRS under that agency's Voluntary Closing
Agreement Program ("VCAP") on June 18, 2019.[8] (2-ER-491, ¶ 6; 2-ER-497-760.)
Because Mr. Harder left sparse information regarding the Plan before he ceased
communicating with Westco, and Plan records needed to be reconstructed from
other corporate records, approximately two years passed between the Ferenczy
Firm's retention and the filing of the VCAP submission. (2-ER-491, ¶ 8.) Certain
of the operational errors addressed through that submission implicated apparent
deviations from Code § 401(a). That section outlines the requirements for a
retirement plan trust to constitute a "qualified" trust. A trust that meets the
requirements of Code § 401 enjoys the tax deferral benefits provided for by law.
Conversely, if left uncorrected, failures to comply with Code § 401 may affect a
retirement plan's "qualified" status. (2-ER-492, ¶ 9.) *See also, In re Witwer,* 148
B.R. 930, 937 (Bankr. C.D. Cal. 1992), *aff'd,* 163 B.R. 614 (B.A.P. 9th Cir. 1994)
("The provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification
under the Internal Revenue Code.") Through the VCAP submission process,
Westco voluntarily proposed means of resolving these operational defects.
Although Westco (with the Ferenczy Firm's help) initially submitted the matter
through VCAP, after further discussion with the assigned IRS personnel, the
submission was converted to a traditional Voluntary Correction Program ("VCP")
submission, which is a routine program offered by the IRS and described in
Revenue Procedure 2021-30. The VCP method was more appropriate because
VCAP, as mentioned above, is designed to resolve taxation matters. Any

---

[8] VCAP requests are submitted to the IRS to resolve certain income or excise tax
issues involving tax-deferred retirement plans established under Internal Revenue
Code ("Code") §§ 401(a), 403(a), 403(b), 408(k) or 408(p) that cannot be corrected
through the IRS's Employee Plans Compliance Resolution System ("EPCRS").
Revenue Procedure 2021-30 governs the EPCRS program. That revenue procedure
is available for review here: https://www.irs.gov/pub/irs-drop/rp-21-30.pdf.

remaining taxation matters were resolved once the IRS approved the 2010 benefit freeze relative to Westco's owners. (2-ER-492, ¶ 10.) The VCAP and subsequent VCP submission addressed the following issues and proposed the following approaches to their resolution – all of which the IRS approved.

### 1. Failures To Follow The Plan's Terms

Westco reasonably assumed that Plan benefits were properly frozen in 2010. Consequently, it inadvertently operated the Plan inconsistently with its terms until benefits were frozen in 2017. Most notably, all benefit calculations were made on the assumption that the Plan had been frozen and no newly eligible employees were permitted to enter the Plan on or after October 1, 2010. But because the Plan was not properly frozen in 2010, benefits continued to accrue and new employees hired in and after 2010 should have been allowed to participate in the Plan. (2-ER-490, ¶ 5; 2-ER-453.)

The mistaken assumption that the Plan was frozen in 2010 also resulted in a failure to fund the Plan to the extent required by law. As a result, effective October 1, 2015, the Plan failed to meet its Adjusted Funding Target Attainment Percentage ("AFTAP"). A defined benefit plan's AFTAP may generally be described as its assets divided by its liabilities. The law requires plans to provide that if the AFTAP is above 80%, the plan will not face any benefit restrictions, but benefit increases will be prohibited if the AFTAP is between 60% and 80%. The law further requires that if the AFTAP falls below 60%, benefit accruals must be frozen and any form of payment that pays out faster than a single life annuity (such as a lump sum) is prohibited. (*See, generally,* 26 U.S.C. §§ 436(c), (d).)

### *The proposed resolution of the failures to follow the Plan's terms*

Westco's VCAP submission proposed that, since Westco's owners all intended for the Plan to be frozen in 2010 (and believed it had been), the most

equitable resolution relative to the Plan's "rank and file" participants would be to (1) freeze benefit accruals attributable only to the owner-employees as of the intended October 1, 2010 freeze date and (2) allow the continuation of accruals for the benefit of non-owner participants through the actual freeze date of December 27, 2017. (2-ER-492-493, ¶ 11.) The IRS agreed to that proposal. (*Id.*)

### 2. Failure To Comply With Code § 401(A)(26)

The Ferenczy Firm and the Plan's actuary also determined that beginning with the Plan year ending September 30, 2011, the Plan failed to comply with Code § 401(a)(26). (2-ER-493-494, ¶ 13.) That section – which encompasses the "meaningful benefit" rules that Appellants claim the Plan violates – provides that defined benefit plan trusts must benefit a certain minimum number of employees. Specifically, Code § 401(a)(26) requires that a Plan provide meaningful benefits to at least the lesser of (1) 50 employees, or (2) the greater of 40 percent of all employees or 2 employees (one employee if there is only one employee). In accordance with other IRS guidance,[9] when testing the Plan for Code § 401(a)(26) compliance, it was determined that the Plan failed starting with the October 1, 2012 Plan year. As it relates to the Plan, and applying the guidance of the Shultz Memo, the 401(a)(26) test only considers the participants covered in Group 1 and Group 2, since the Shultz Memo indicated that a benefit accrual rate of .5% was sufficient to constitute meaningful benefits within the meaning of the § 401(a)(26) requirement.

---

[9] June 6, 2002 Memorandum from the IRS's Paul T. Shultz, Director Employee Plans, Rulings and Agreements relating primarily to defined benefit plans with cash balance formulas (the "Shultz Memo"), a copy of which may be found at SER 8-11.

***The proposed resolution of the failure to comply with Code § 401(a)(26)***

To resolve the Plan's failure to comply with Code § 401(a)(26), Westco's VCAP Submission proposed to transfer five non-highly compensated employees from Group 3 to Group 2 over the period of time from October 1, 2012, through October 1, 2017. This proposed resolution resulted in the Plan satisfying the § 401(a)(26) test. The change was approved by the IRS and adopted by Plan amendment. (2-ER-493, ¶ 12; 2-ER-762-764.) Having made that change, the Plan complied with Code § 401(a)(26) (including the IRS's so-called "meaningful benefit" requirement).

### 3. Incorrect Required Minimum Distributions

Mr. McGhie and the Ferenczy Firm discovered that Mr. Harder miscalculated the amount of Required Minimum Distributions ("RMDs") owed to Alan Zwillinger, Carole Zwillinger and Florence Lent during the years 2012 to 2016, as required by Code § 401(a)(9). (2-ER-493-494, ¶ 13.) More specifically, since Westco proposed – in connection with the VCAP submission – to freeze benefit accruals for owner-participants effective October 2010, the RMDs issued from the Plan to Mr. and Mrs. Zwillinger and to Ms. Lent exceeded the amounts they were owed pursuant to Code § 401(a)(9) and applicable Treasury Regulations. (*Id.*)

***The proposed resolution of the incorrect minimum distribution payments***

To address the incorrect minimum distributions, Westco proposed that it deposit to the Plan's account an amount equal to the overpayments, and the IRS approved the proposed correction. (*Id.*)

### 4. Failure To Timely Amend The Plan

GSA and the Ferenczy Firm also determined that during Mr. Harder's

11

tenure, Westco inadvertently failed to adopt a restated plan document as required by IRS Notice 2012-76, and a mandatory interim Plan amendment mandated by Code § 436. (2-ER-494, ¶ 14.)

### *Proposed resolution regarding the delinquent Plan amendment*

Westco adopted the required restatement and interim amendment, with IRS approval. (*Id.*) In addition, IRS officials brought to Ms. Cohen's attention the typographical errors appearing in the 2011 restated Plan document regarding the Plan's benefit formula (*i.e.,* the .05 vs. .5 and .01 vs. .1 benefit accrual rates of Groups 2 and 3). Those errors were corrected via an amendment executed June 1, 2021.[10] (2-ER-289; 2-ER-485-487.)

### 5. Failure To Comply With Code § 436

Code § 436 requires the actuary for single employer plans to file an annual certification regarding the plan's AFTAP. Mr. Harder failed to file AFTAP certifications for 2014 and subsequent Plan years. (2-ER-494, ¶ 15.)

### *Proposed resolution regarding the failure to comply with Code § 436*

After discovering that required AFTAP certifications were not submitted on Mr. Harder's watch, the Plan's actuary (G. Neff McGhie) completed all delinquent AFTAP certifications and presented them along with the VCAP submission. (*Id.*; 2-ER-788, ¶ 12.)

The IRS issued a signed compliance statement approving Westco's proposed remedial actions on May 13, 2021. The operational errors in the Plan that occurred

---

[10] As discussed in more detail below, the Plan limited benefits payable to persons in Group 1 to 12 Years (rather than 18) of Benefit Service, while the benefits of Groups 2 and 3 were not limited to any specific number of Years of Benefit Service.

during Mr. Harder's tenure were all thereby resolved. (2-ER-494, ¶ 16; 2-ER-768-778.)

### F.     The Plan's Current Funding Status

The Plan currently meets all funding requirements imposed by law and the Plan's terms. (2-ER-788, ¶ 11.) Although the IRS expressly focused on and approved the Plan's benefit formula during the VCAP process, brought the typographical errors in the 2011 Restated Plan document to the attention of Westco's counsel, and addressed § 401(a)(26) concerns, it took no issue with the level of benefits provided to the Plan's participants. (2-ER-495, ¶¶ 17-18.)

Westco is current in its obligations to all creditors and is not at any risk of defaulting on any of its obligations. If Westco terminated the Plan immediately, it has the means to fund the Plan sufficiently to pay 100% of the present value of accrued benefits. (2-ER-287, ¶ 15.)

## II.    RELEVANT PROCEDURAL HISTORY

Appellees filed their Motion for Summary Judgment on February 15, 2022. (2-ER-229.) The Motion was supported by a Statement of Uncontroverted Facts, as well as declarations executed by Steven Zwillinger, Alison J. Cohen, G. Neff McGhie, and Appellees' counsel. (2-ER-796-818; 2-ER-260-289; 2-ER-488-496; 2-ER-785-789.)

Appellants filed their Opposition to the Motion for Summary Judgment on April 18, 2022. (3-ER-819-833.) Their responding "Statement of Genuine Disputes" (3-ER-843-846) did not address the uncontroverted facts that Appellees presented in support of the Motion, but instead asserted a number of "issues" (not facts) that Appellants claimed remained in dispute.

The District Court issued an "Order Granting Defendants' Motion for

Summary Judgment" on August 18, 2022 (3-ER-875-888) and entered judgment in favor of Defendants/Appellees that same day. (3-ER-889-890.) Appellants filed a timely notice of appeal on September 6, 2022. (3-ER-891-893.)

## III. SUMMARY OF ARGUMENT

The Court may affirm the judgment of the District Court on any basis found in the record – and there are ample reasons to do so. First, the Plan has paid all benefits owed to participants eligible to receive them. The Plan's AFTAP is over 95%, and Westco is not at any risk whatsoever of defaulting on its remaining obligations to participants and beneficiaries. The Plan is sufficiently funded to pay all benefits owed to its participants. Appellants therefore have not sustained any injury-in-fact and lack Article III standing, pursuant to the Supreme Court's recent decision in *Thole.* To the extent that distributions to Westco's owners exceeded the correct amounts (because of Mr. Harder's errors), there is no dispute that Westco corrected the issue by making a contribution from Westco to the Plan, as approved by the IRS.

Second, the Plan provides "meaningful benefits" as that term is used in the Code and governing Treasury Regulations. The meaningful benefit rule falls under the umbrella of Code § 401, which sets forth the requirements for retirement plan trusts to be "tax qualified." But the AOB, like Appellants' brief in the District Court before it, is silent with respect to the legal framework governing the "meaningful benefit" determination, and the uncontroverted facts show that the Plan satisfies the meaningful benefit requirement. Appellants also rely upon a faulty illustration regarding benefits that might be owed to a hypothetical participant. That illustration incorporates incorrect assumptions that do not accurately reflect the Plan's terms and that are inconsistent with the uncontroverted facts. That flawed illustration has no bearing upon the actual "meaningful benefits"

14

requirement, which does not focus on benefits that any single participant may receive, but instead depends upon whether the Plan provides a level of benefits deemed meaningful by the IRS to a sufficient number of participants. And while the Plan satisfies the meaningful benefit requirement, there is no individual cause of action available to retirement plan participants to challenge a plan's alleged failure to adhere to the meaningful benefit rule, or any other violation of Code § 401.

The claims of Appellant Kater Perez do not support the relief that Appellants seek in this case – losses to the Plan. She alleges in the Complaint that the Plan owed her benefits upon the passing of her husband, who was a Plan participant. The uncontroverted facts show, however, that she never requested payment of a benefit. And even if she did, the Plan's non-payment of that benefit would not support recovery of alleged losses due *to the Plan*. Contrary to the statements in the AOB, Appellees *did* advance this argument in the District Court. Appellants, however, did not respond to it below or in the AOB.

Finally, Appellants now assert, for the first time on appeal, that they have standing simply because their Complaint seeks certain equitable relief. This Court should exercise its discretion not to consider that argument, since Appellants did not raise it below. But even if the Court were to consider the argument, it fails. Not only does Appellants' Complaint *not* expressly seek the equitable relief that the AOB claims it does, but Appellants fail to address why or how they have sustained an injury-in-fact supporting a finding of standing. And contrary to Appellants' argument, the law does not provide that simply by praying for equitable relief is an ERISA plaintiff relieved of the burden to establish injury-in-fact for purposes of Article III standing. The Court should affirm the District Court's decision entering summary judgment in favor of Appellees.

## IV. ARGUMENT

### A. <u>Standard Of Review</u>

The Court of Appeals reviews a district court's grant of summary judgment de novo. *United States ex rel. Kelly v. Serco, Inc.,* 846 F.3d 325, 329 (9th Cir. 2017). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." [Citation omitted.] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 329–30. Moreover, "[t]he district court's grant of summary judgment may be affirmed if it is supported by any ground in the record, whether or not the district court relied upon that ground." *Id.* at 330.

### B. <u>Appellants Lack Standing To Pursue Their Claims, Because It Is Uncontroverted That The Plan Has Paid All Benefits Due To Date, And Is Not At Imminent Risk of Default</u>

The "constitutional minimum" of standing contains three elements, one of which is that the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual and imminent, not "conjectural" or "hypothetical. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "[T]o withstand a motion for summary judgment on the ground that the plaintiff lacks standing, a plaintiff cannot rely on mere allegations but rather must "'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true.'" *$133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Appellants here cannot establish the injury-in-fact requirement to establish Article III standing for the reasons expressed in *Thole*. Both this case and *Thole*

involved alleged breaches of fiduciary duty in connection with the administration of defined benefit pension plans.[11] Defined benefit plan retirees "... receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole,* 140 S.Ct. 1t 1618.

Plaintiffs in *Thole* challenged investment decisions made by plan fiduciaries and argued that if the defendants had invested plan assets prudently, the value of those assets would have been greater. The Supreme Court rejected the notion that the plaintiffs had standing to challenge the defendants' investment decisions, noting:

> [i]f Thole and Smith were to *lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less. If Thole and Smith were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more.

(*Id.* at 1619; emphasis in original.)

The same is true here. Even if, as Appellants allege in their Complaint, the Plan's investments could have generated higher returns, and/or even if the Plan were ever used to "funnel" money to Appellees, it would have *no impact* on the

---

[11] While Appellants repeatedly insist that Appellees have admitted ". . . to an array of ERISA fiduciary violations," (AOB, p. 8), Appellees admit no such thing. Rather, Appellees acknowledge as they have all along that operational errors occurred in the Plan's administration. Appellees took pains to correct those operational defects through the VCAP/VCP process, and the IRS ultimately approved of the proposed corrections. As the District Court correctly observed, those operational errors do *not* constitute fiduciary breaches. (3 ER 886). "The mere fact that ERISA sets forth requirements for qualification of plans does not lead one to conclude that the failure of a plan to meet these requirements is a 'violation' of ERISA." *Trenton v. Scott Paper Co*., 832 F.2d 806, 810 (3d Cir. 1987).

benefits Plan participants have received and will receive. The benefits Plan participants will receive ". . . are fixed and will not change, regardless of how well or poorly the plan is managed. The benefits paid to the participants in a defined-benefit plan are not tied to the value of the plan." (*Id.* at 1620.) The Court in *Thole* also held that for defined benefit plan plaintiffs to establish standing, they must demonstrate ". . . that the alleged mismanagement of the plan substantially increased the risk that the plan and the employer would fail and be unable to pay the plaintiffs' future pension benefits." (*Id.* at 1622.)

There is no evidence either that the Plan will fail, or that Westco is in any danger of failing such that Plan participants' benefits are at risk. Indeed, the *uncontroverted* evidence is that the Plan is 95% funded and not in any danger of default, and that Westco itself is current on its obligations. As in *Thole*, "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits. The plaintiffs have no concrete stake in this dispute and therefore lack Article III standing." (*Id.*)

Appellants first attempt to distinguish *Thole* by arguing that their claims did not include allegations of Appellees "making imprudent investments." (AOB, p. 7.) That is false, as their Complaint rested, among other things, on allegations that Plan assets were "held in cash" (1-ER-16, ¶ 58), that Appellees "[f]ail[ed] to hire a professional investment advisor to oversee the [Plan's] investments and investment strategy," "[f]ail[ed] to invest the [Plan's] assets with prudence" (1-ER-21, ¶¶ 77(A), (C)) and ". . . follow[ed] an investment strategy that was designed [sic] satisfy the tax and retirement needs of the Defendants that simultaneously denied the Plaintiffs and all other participants the opportunity to benefit from one of the longest periods of sustained growth of the US economy and equity markets in history." (1-ER-22-23, ¶ 84(A).) Appellants also relied upon this "imprudent investment" theory in their discovery responses. Their responses to written

18

interrogatories stated: "Defendants failed to fund the [Plan] appropriately in a number of ways. First, Defendants did not prudently invest the assets of the [Plan]. Had they done so, the [Plan's] funding would have been substantially greater. All class members have been financially damaged because Defendants failed to prudently invest the assets of the Pension Fund." (2-ER-255, lns. 8-10.) Appellants may wish to distance themselves from their own imprudent investment allegations now because they know that those allegations fail in the wake of *Thole*. In any event, the Court may dispense with Appellants' claims to the extent they rest on the Complaint's original "imprudent investment" claims.

Second, Appellants try to distinguish *Thole* by arguing that Appellees have used the Plan "... to funnel money to themselves and failing to cause the [Plan] to pay any meaningful retirement benefits to any other Plan participants." (AOB, p. 8.) This purported distinction also fails. Even if Appellants' contention were true (it is not), the upshot of the claim is that distributions to Appellees diminished the value of Plan assets. But the alleged depletion of Plan assets does not give rise to standing where there has been no showing that participants' benefits are at risk. Appellants themselves acknowledge that if ". . . the [Plan] was adequately funded such that all [Plan] participants had and would continue to receive their retirement benefits, then *Thole* would be applicable." (AOB, p. 7.) That is *precisely* what the uncontroverted evidence shows. The Plan has paid all benefits owed to participants to date (including benefits owed to Appellant Merri Diaz – *see,* 2-ER-286, ¶ 13; 2-ER-787, ¶ 8), and is adequately funded to pay all benefits that may come due in the future.

To the extent the Plan distributed benefits to Appellees, those distributions have not in any way jeopardized benefits owed to Appellants, or any other eligible Plan participants. It is undisputed that the Plan's Adjusted Funding Target Attainment Percentage, or "AFTAP," was 95.13% as of the Plan year ending

19

September 30, 2021. (2-ER-788, ¶11.) It is also undisputed that (1) Westco is current on its obligations to creditors and (2) it is not at risk of defaulting on any obligations. (2-ER-287, ¶ 15; 2-ER-810, ¶ 34.) Appellants do not dispute that if the Plan is terminated, Westco has the means to fund the Plan sufficiently to pay 100% of the present value of the Plan's accrued benefits owed. (*Id.*) They also did not (and do not) dispute that to the extent the Plan made distributions to Alan and Carole Zwillinger that exceeded their RMDs, the issue was resolved through the VCAP/VCP process. Specifically, the IRS approved a deposit from Westco to the Plan to rectify the overpayments. (2-ER-493-494, ¶ 13.) The District Court correctly noted that, once Appellees corrected the Plan's operational errors (including the excess distributions), there was no risk that Appellants (or any other class members) would receive anything less than the benefits owed to them under the Plan. The Court stated:

> The Plan's AFTAP is over 95%. To the extent any of Westco's prior breaches and operational errors with respect to the Plan placed the Plan at any risk of default, those errors have been corrected such that they no longer pose any such risk. In short, Westco's undisputed evidence demonstrates that the Plan is not currently at risk of any sort of default.

(3-ER-884.)

Consequently, Appellants' claim fails because to establish standing, they must demonstrate ". . . that the alleged mismanagement of the plan substantially increased the risk that the plan *and the employer* would fail and be unable to pay the plaintiffs' future pension benefits." (*Thole* at 1622; emphasis added.) Because it is undisputed that the Plan has sufficient assets and Westco is in no danger of failing, Appellants have no concrete stake in their claims, and they lack Article III standing.

20

### C.    <u>The Plan Provides "Meaningful Benefits" To Participants</u>

As they did in the District Court, Appellants attempt to cobble together an argument that the Plan somehow failed to provide "meaningful benefits" to participants. However, there is not a single citation in the AOB to the law outlining the "meaningful benefit" rule (it has its origins in the Internal Revenue Code), or any discussion of how the law operates. Instead, the AOB includes a hypothetical illustration of an employee with 20 years of service and "average monthly compensation" of $3,000, states that employee would receive a Plan benefit of $6 per month upon retirement, and assumes without any analysis that the law would treat that benefit as falling short of a "meaningful benefit." (Appellants assert: "[a]t risk of stating a blinding glimpse of the obvious, a pension of $6 per month after 20 years of service is not a meaningful benefit.") (AOB, p. 9.) There are multiple flaws in the argument.

First, Appellants' illustration perpetuates the same flaw underlying the Complaint and their briefing below, which understated the benefits of Group 2 and Group 3 participants by a factor of 10. In support of the "$6 per month" assumption in the AOB, Appellants cited page 201 of the Excerpts of Record. That citation corresponds not to any evidence presented to the District Court in connection with the Motion for Summary Judgment, but to Appellants' own Memorandum of Points and Authorities in Support of Motion for Class Certification, which in turn relied upon an allegation in their Complaint. The Complaint, however, referenced an outdated version of the Plan document, and demonstrated ignorance of the true facts. During the VCAP/VCP process discussed above, the IRS brought to Westco's attention typographical errors in the then-governing Plan document with respect to the benefits of Group 2 and 3 participants. Specifically, the original Plan document correctly showed that Group 2 benefits were based on .5% of Average Monthly Compensation, and that Group 3

benefits were based on .1% of Average Monthly Compensation. The restated Plan document – which Appellants focused on in their Complaint - inadvertently reflected rates of *.05*% and *.01*%, respectively. (2-ER-403.) Once alerted to the issue, Westco adopted an amendment to the Plan that conformed § 5.1 of the restated Plan document to the benefit formula set forth at § 3.1 of the original Plan document. (2-ER-289, ¶ 23; 2-ER-586.) Appellants' Complaint – which failed to consider the typographical error in the 2011 Plan document and the Plan amendment correcting that error – therefore understates the benefits to be paid to Group 2 and 3 participants by a factor of 10. Appellees briefed this very point in the proceedings below (2-ER-256-257). The AOB nevertheless advances the same baseless illustration that is divorced from the actual uncontroverted facts.

Second, even if the AOB accurately portrayed the benefits that might inure to a particular hypothetical participant (it does not), Appellants' illustration is apropos of nothing. The law governing "meaningful benefits" has nothing to do with the dollar value of Plan benefits that any one individual hypothetical participant might receive. Appellants failed to address the legal standards governing that issue in the proceedings below and in the AOB. (Appellees addressed the issues in their briefing – *see,* 2-ER-256-258.) Appellants did not respond to that discussion in their opposition papers below. They have therefore conceded the argument by failing to even address the actual legal framework governing the "meaningful benefit" issue. "When a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded." *Douglas v. Cty. of Riverside,* 2015 WL 13918905, at *19 (C.D. Cal. 2015). Nevertheless, Appellees discuss the factual and procedural framework by which the issue reached this Court, so that the Court has a full understanding of the matter.

Appellants' Complaint alleged that the Plan fails to provide "meaningful

benefits" within the meaning of § 5.1 of the restated Plan document, which provides that "[t]he Employer must ensure that the benefit formula described by this subsection continues to provide meaningful benefits within the meaning of Code Section 401(a)(26)." Specifically, the Complaint alleged that the participants identified as Groups 2 and 3 of the Plan do not receive meaningful benefits. (*See*, 1-ER-12-13, ¶ 44.) As discussed above, this allegation was based on the typographical error that appeared in one version of the Plan relative to the benefit accrual rates of Groups 2 and 3. It is undisputed that Westco rectified the typographical error by an amendment to the Plan. Appellants continue to pretend otherwise, although the issue has been pointed out repeatedly.

Code § 401(a)(26) – which Appellants do not even mention in the AOB – provides that to constitute a qualified trust, the trust must benefit at least the lesser of 50 employees, or the greater of 40 percent of all employees. It is not required to benefit all employees. Neither the Code nor the Plan document define the term "meaningful benefits." Rather, Treasury Regulations interpreting 26 U.S.C. § 401(a)(26) state in relevant part as follows:

> Whether a plan is providing meaningful benefits, or whether individuals have meaningful accrued benefits under a plan, is determined on the basis of all the facts and circumstances. The relevant factors in making this determination include, but are not limited to, the following: the level of current benefit accruals . . . the number of employees with accrued benefits under the plan; and the length of time the plan has been in effect.[12]

26 C.F.R. § 1.401(a)(26)-3(c)(2).

The Shultz Memo provides additional guidance regarding factors that IRS officials should consider in determining whether a plan provides "meaningful

---

[12] The language excluded from the quoted language is specific to "cash balance" defined benefit plans and is irrelevant to the analysis here.

benefits." In that Memo, Mr. Shultz stated that IRS personnel should raise questions ". . . in cases involving defined benefit plans that do not have cash balance formulas but provide much larger benefit accruals for shareholders (or other principals) and, when tested on a benefits basis, have benefit accrual rates of less than one-half of one percent (0.5%) of compensation (per year of participation or service) for non-shareholder employees." (SER-11.)

Appellees presented evidence in support of their Motion – which Appellants did not address in briefing below or in the AOB – that once the Plan was amended to add non-highly compensated employees to "Group 2" (whose members accrued benefits at .5% of compensation per year of service), the Plan benefitted at least the minimum number of employees at an accrual rate of .5%, thereby complying with Code § 401(a)(26). (2-ER-493, ¶ 12; 2-ER-762-74.) The IRS approved that amendment, thereby acknowledging that the Plan as amended satisfies Code § 401(a)(26). (*Id.*)

Appellants have therefore failed to address either (1) the legal framework governing the "meaningful benefit" analysis or (2) the undisputed facts of this case relevant to that analysis. There is no triable issue of fact with respect to whether the Plan provides meaningful benefits. The Court should therefore affirm the judgment in favor of Appellees.

### D. There Is No Private Right of Action For A Plan's Alleged Failure to Satisfy the Qualification Requirements of IRC § 401

Not only have Appellants ignored the legal standards governing the "meaningful benefit" requirement and the facts relating to those standards, they also incorrectly assume that a private right of action exists relative to a plan's alleged failure to adhere to those requirements. (Although, there is no genuine issue as to whether the Plan complies with those requirements.)

"A qualified retirement plan is one that satisfies specific requirements of the Internal Revenue Code, particularly I.R.C. § 401(a) ..." *In re Moses*, 215 B.R. 27, 30 (B.A.P. 9th Cir. 1997), *aff'd*, 167 F.3d 470 (9th Cir. 1999). The "meaningful benefit" issue arises under the umbrella of Code § 401. The District Court held that "[a] failure to provide 'meaningful benefits' will result in a plan losing its tax-favored status; it does not, in and of itself, provide a plan participant with a civil cause of action." (3-ER-886.) That holding was correct, as courts confronting other requirements set forth in Code § 401 have held that plan participants have no substantive rights resulting from a plan trust's alleged failure to adhere to that section's provisions. *See, e.g.*, *In re Witwer*, 148 B.R. 930, 937 (Bankr. C.D. Cal. 1992), aff'd, 163 B.R. 614 (B.A.P. 9th Cir. 1994):

> The provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification under the Internal Revenue Code. Although a transfer in violation of the required anti-alienation provision could result in adverse tax consequences I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce.

Following the completion of the VCAP/VCP process -- which included corrections to the Plan relative to the "meaningful benefit" issue as discussed above -- the IRS issued a signed compliance statement to Westco. As stated by the IRS, that compliance statement ". . . permits your plan to retain tax favored status under the Internal Revenue Code and is limited to the specific failures and periods described in the compliance statement." (2-ER-770.) In other words, there is no genuine issue of fact with respect to Appellants' "meaningful benefit" claims.[13]

---

[13] If operational errors in plan administration provided a basis for participant claims, the Courts would be deluged with actions by participants seeking relief with respect to issues that in the ordinary case are addressed through IRS remedial

**E.** **Plaintiff/Appellant Kater Perez's Claims Were Not Brought For The Benefit Of The Plan**

Appellants argue that the District Court ". . . erred by holding that Plaintiffs/Appellants lack standing because they allege only individual injuries as opposed to Plan-wide injuries." (AOB, p. 14.) They assert that "Defendants/Appellants did not even make this argument." (*Id.* at 15.) That is false. In the proceedings below, Appellees pointed out that the claims of Plaintiff/Appellant *Kater Perez* appeared to be individual benefit claims, and not claims for Plan-wide relief. Appellants did not respond to that argument in the District Court, and do not address it here. Nevertheless, since the AOB injects confusion into these proceedings about what took place in the proceedings below, Appellees will set the record straight.

The two claims for relief in the Complaint purport to seek Plan-wide relief for losses *to the Plan* as a result of alleged violations of ERISA §§ 404(a)(1)(B) (29 U.S.C. § 1104(a)(1)(B)) and 404(a)(1)(D) (29 U.S.C. § 1104(a)(1)(D), and ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)). Violations of ERISA § 404 (29 U.S.C. § 1104) are actionable under ERISA § 409 (29 U.S.C. § 1109(a)), which provides, in relevant part, that a person who breaches any of the duties imposed upon fiduciaries by that subchapter of ERISA ". . . shall be personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach . . ." (Emphasis added.) Accordingly, in connection with their claims for relief, Appellants alleged that because of purported breaches by Defendants/Appellees,

---

programs such as the VCP and VCAP programs, which is what happened in this case. After all, "[p]eople make mistakes. Even administrators of ERISA plans. That should come as no surprise, given that [ERISA] is 'an enormously complex and detailed statute' [citation omitted], and the plans that administrators must construe can be lengthy and complicated." *Conkright v. Frommert,* 559 U.S. 506, 509 (2010).

the *Plan* lost money, and that "Defendants are liable to restore all losses suffered by the [Plan] caused by their breach of fiduciary duties." (*See,* 1-ER-22, ¶¶ 80-81; 1-ER-23, ¶ 86-87.)

However, there is a disconnect between the claims that Appellant *Kater Perez* asserted in the Complaint and the relief that Appellants purport to be seeking – the recovery of losses allegedly sustained by *the Plan*. Specifically, the Complaint alleged that Plaintiff/Appellant Perez was supposed to receive, but did not receive, a benefit from the Plan upon the death of her husband, Marco Perez. (1-ER-4, ¶ 12.) [14]

If it were true that Ms. Perez did not receive a benefit to which she was entitled (it is not), she would have recourse under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), which entitles participants and beneficiaries "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Ms. Perez never asserted a claim for benefits pursuant to that provision. Instead, Appellants lumped her claims into all others in the Complaint, which sought recovery of losses allegedly due *to the Plan* under ERISA §§ 502(a)(2) and 409 (29 U.S.C. §§ 1132(a)(2) and 1109). (*See,* ER 22, ¶ 81; 23, ¶ 87.)

In the proceedings below, Appellees simply made the point that even if the Plan owed Ms. Perez a benefit (which is not the case), the *Plan* has sustained no losses by virtue of not having paid it. (2-ER-248-50.) Appellants ignored the argument in the proceedings below, and ignore it here, thereby conceding it. "[O]n

---

[14] Appellees presented *uncontroverted* evidence below that Ms. Perez never submitted a request for death benefits under the terms of the Plan on the form designated for such requests. (*See,* 2-ER-287, ¶ 16; 2-ER-810, ¶ 36.) Appellants did not contest this fact below, or otherwise respond to the point, nor do they mention it in the AOB.

27

appeal, arguments not raised by a party in its opening brief are deemed waived." *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999).

> ### F.   The District Court Properly Found The Evidence Presented By Appellees To Be Uncontroverted

Appellants contend that the District Court ". . . refused to consider any of the evidentiary submissions made by Plaintiffs/Appellants in their opposition to Defendants'/Appellees' motion for summary judgment." (AOB, p. 17.) They contend, for example, that they ". . . submitted a declaration from their expert witness Mitchell L. Bilbe …," which they claim the Court "refused to consider," and state that they ". . . also submitted a statement of genuine disputes which numerically tracked Defendants'/Appellees [sic] statement of undisputed facts." (AOB at 17-18.) The claim that the Court "refused to consider" the Declaration of Mr. Bilbe, and the claim that they submitted a statement of genuine disputes that "numerically tracked" Appellees' Statement of Uncontroverted Facts, are both demonstrably incorrect.

First, the record is clear that the District Court expressly *did* consider the Bilbe Declaration that Appellants offered in opposition to the Motion for Summary Judgment but found that it failed to establish a genuine issue of material fact. (3-ER-885.)[15] That ruling is consistent with the Federal Rules of Civil Procedure: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

---

[15] The District Court also observed that Appellees filed Evidentiary Objections to the Declarations of both Mr. Bilbe and Daniel Draney but held that ". . . Westco wins on this Motion even when all of its well-formed evidentiary objections are overruled." (3-ER-885, n. 6.)

Second, Appellants' "Statement of Genuine Disputes" did not "numerically track" Appellees' Statement of Uncontroverted Facts as required by the Local Rules.[16] The latter document presented 43 uncontroverted facts supported by admissible evidence. (2-ER-796-813.) Appellants made no attempt to respond to those 43 facts in their responding "Statement of Genuine Disputes." (3-ER-843-846.) The District Court therefore correctly found that ". . . Plaintiffs' failure to address Westco's assertions in the latter's SUF functions as a concession that the facts in the SUF are undisputed for the purpose of this Motion." (3-ER-876.)

Appellants fail to cite any authority for the proposition that the District Court exceeded its authority in so holding. Nor could they, since "district courts have the power to promulgate rules, 28 U.S.C. § 2071, and those rules have "the force of law." *Perrow v. D.C.*, 435 F. Supp. 3d 9, 15 (D.D.C. 2020), citing *Hollingsworth v. Perry,* 558 U.S. 183, 191 (2010). Numerous cases support the District Court's decision to accept the facts presented by Appellees as uncontroverted. *See, e.g., Ellington v. House,* 2019 WL 4196319 at *8 (C.D. Cal. July 23, 2019) report and recommendation adopted, 2019 WL 4195337 (C.D. Cal. Sept. 3, 2019) (". . . pursuant to Fed. R. Civ. P. 56(e) and Local Civil Rule 56-3, the Court will assume that those material facts that Plaintiffs failed to oppose with specific evidence, and which are otherwise admissible and supported by the evidence, are undisputed for purposes of Defendants' Motions for Summary

---

[16] Local Rule 56-3 of the Central District of California provides:

> In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.

Judgment"); *Lux EAP, LLC v. Bruner,* 2022 WL 2168877, at *2 n.3 (C.D. Cal Apr. 11, 2022) (taking all facts in defendants' statement of uncontroverted facts as undisputed for purposes of summary judgment where plaintiff filed a statement of genuine issues without responding to any of the defendant's assertions in the statement of uncontroverted facts); *Werner v. Evolve Media, LLC,* 2020 WL 3213808 at *1 (C.D. Cal. Apr. 28, 2020) (deeming facts to be undisputed given the defendants' failure to file a Statement of Genuine Issues).

Even more importantly, however, is that Appellants have failed to state in their AOB what specific information they claim the District Court should have considered but did not. They also fail to explain how any of that unspecified evidence gives rise to a triable issue of fact. The District Court was "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1029 (9th Cir. 2001). Nor is this Court required to guess how evidence that Appellants claim the District Court ignored would have changed the outcome.

### G.      The Court Should Not Entertain Appellants' New Argument That They Have Standing Because They Seek Equitable Relief, But Even If The Court Considers The Argument, It Fails

Appellants argue, for the first time on appeal, that they have standing to pursue their claims since they are seeking equitable relief in addition to monetary losses allegedly sustained by the Plan. They now claim that they are seeking "surcharge, restitution, disgorgement, reformation, declaratory and injunctive relief." (AOB, p. 12, citing the Prayer of the Complaint – 1-ER-24.) At the outset, neither page 24 nor any other page of the Complaint makes any mention of surcharge, restitution, reformation or disgorgement. The Complaint seeks "declaratory relief" only in the sense that it asks the Court to "[d]eclare" that Defendants breached their fiduciary duties and "[d]eclare" that Plan assets inured

to the benefit of Defendants. It also generically seeks "other equitable relief." And Appellants' two claims for relief squarely focus on recovering monetary relief for the benefit of the Plan: both claims conclude by seeking to recover *monetary losses* allegedly sustained by the Plan pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a). (1-ER-22, ¶ 81; 1-ER-23, ¶ 87.) There is therefore a material disconnect between what the Complaint prays for and the relief the AOB claims it seeks. In any event, because Appellants did not assert the argument that they have standing due to their request for equitable relief in the District Court, this Court has discretion to disregard it, and should do so.

The Ninth Circuit "will generally not consider an issue raised for the first time on appeal." *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986). There are three exceptions to the general rule, none of which apply here. Those exceptions are (1) in an "exceptional" case when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; (2) when a new issue arises while appeal is pending because of a change in law, or; (3) when the issue is purely one of law and the necessary facts are fully developed. *Id.*

First, there is nothing "exceptional" about this case and no "miscarriage of justice" will result from an order refusing to entertain an argument that Appellants did not raise below. The District Court already found that there is no danger whatsoever that Appellants will not receive from the Plan precisely what they are entitled to receive, and that conclusion was correct. The Court also found that Appellants have no basis to challenge whether the Plan satisfies the IRS's meaningful benefit requirements, as those requirements arise under Code § 401. Thus, there would be no basis upon which the Court could issue the extraordinary relief Appellants now claim to seek – an order mandating that the Plan be amended to modify its benefit formula.

Second, there has been no change in law while this appeal has been pending.

31

Appellants cite cases going back as far as 1990 that they (incorrectly) claim support standing in the absence of individual harm. (*See, Ziegler v. Connecticut Gen. Life Ins. Co.,* 916 F.2d 548 (9th Cir. 1990).)

Finally, the issue that Appellants are now raising is not "purely one of law." Appellants contend that the central issue in this case is whether the Plan provides "meaningful benefits" within the meaning of the Internal Revenue Code. In the briefing below, they stated that ". . . at the core of this lawsuit is Plaintiffs' contention that the Plan fails to provide Plan participants with 'meaningful benefits' as required by the law. That is what this case is really about." (3-ER-824, lns. 1-3.) Appellants also acknowledged in that briefing that ". . . whether a plan provides 'meaningful benefits' to participants and beneficiaries is a mixed question of law and fact that requires determinations of 'all the facts and circumstances.'" (3-ER-831, lns. 1-3.) The standing issue that Appellants seek to litigate, therefore, is by their own admission not one that is "purely one of law." Demonstrating that Appellants lack standing required Appellees to present uncontroverted facts, which they have done. This Court should exercise its discretion not to entertain Appellants' new argument that standing exists simply by virtue of the vague equitable relief requested in their Complaint.[17]

Even if the Court were to entertain Appellants' new argument, it should still conclude that they lack standing. Appellants suggest that the mere fact that their Complaint seeks equitable relief somehow relieves them of the obligation to demonstrate that they have satisfied the injury-in-fact element giving rise to Article

---

[17] In deciding this issue, the Court should certainly disregard any purported "equitable relief" that Appellants did not squarely seek in their Complaint. As the District Court noted, "[w]here 'the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.'" (3-ER-887, citing *Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1080 (9th Cir. 2008).)

III standing. But the principal case Appellants rely upon – *Wit v. United Behavioral Health*, 2022 WL 850647 (9th Cir. 2022) – did not so hold. Defendant in *Wit* was a company that administered mental health and substance use disorder benefits for welfare benefit plans. Plaintiffs claimed that defendant used guidelines in administering claims that improperly denied benefits owed to plan participants. They argued that, even in the absence of evidence that defendant denied their own claims, they had standing to pursue equitable relief relative to the defendant's use of improper guidelines in administering claims in general.

The *Wit* court did not relieve plaintiffs of showing Article III standing. Rather, the court acknowledged that plaintiffs alleging statutory violations must still demonstrate that they have sustained the "concrete injury" requirement. The Court cited *Patel v. Facebook, Inc.,* 932 F.3d 1264, 1270 (9th Cir. 2019), which in turn stated that ". . . for Article III purposes, it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; we must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation." This Court has adopted a two-step approach to determine whether the purported violation of statute causes a concrete injury, asking "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations in this case actually harm, or present a material risk of harm to, such interests." *Id., citing Robins v. Spokeo, Inc.,* 867 F.3d 1108, 1113 (9th Cir. 2017). The *Wit* court concluded that the plaintiffs there established standing due to "the risk that their claims will be administered under a set of Guidelines that narrows the scope of their benefits, and also includes the present harm of not knowing the scope of the coverage their Plans provide." *Wit,* 2022 WL 850647 at *1.

By contrast, Appellants here fail to engage in the analysis dictated by this Court in *Wit* and *Patel*. They have not even stated in their brief what statutory

violations they claim have been committed, leaving the Court and Appellees to guess. Instead, they state only that if they prevail in the case "[t]he Pension Plan's benefit formula would be amended." (AOB at 12.)

That is false. The IRS determines whether the Plan trust is "qualified," and it has already done so. That determination subsumes its conclusion that once Westco made the corrections outlined in the VCAP/VCP filing, the Plan satisfied the meaningful benefit requirement of Code § 401(a)(26). There is no basis upon which the Court could conclude that the Plan's benefit formula would be or should be amended. Accordingly, even if the Court considers Appellants' argument, it should be rejected.

Appellants cite several cases for the incorrect proposition that merely seeking equitable relief is sufficient to confer Article III standing on an ERISA plaintiff. Most of these cases – which Appellants fail to analyze – predate *Spokeo* and *Patel,* and all are distinguishable. *Ziegler* did not even mention the issue of Article III standing. Rather, the Court noted only that certain ERISA violations are actionable "even in the absence of actual injury to a plan or participant." The primary issue addressed in the case was the question of when a claim for breach of fiduciary duty accrues for purposes of ERISA's three-year statute of limitations. 916 F.2d at 550.

*Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003) is likewise inapposite. Plaintiffs there sued a multiemployer pension fund and its trustees, alleging that defendants breached their fiduciary duties by failing to turn over requested financial records in accordance with ERISA's statutory requirements. *Id.* at 1199-1200. Unlike Appellants here, the plaintiffs in *Shaver* asked for purely injunctive relief in the form of either removal of the trustees or an order requiring them to keep better records. *Id.* at 1203. After the district court granted defendants' motion to dismiss, this Court reversed in part,

34

holding that it was not fatal to plaintiffs' claims that they did not plead that a loss occurred because of defendants' failure to produce financial records. *Id.* at 1200. *Shaver* also addressed the much different question of whether the plaintiffs' claims were "capable of surviving a 12(b)(6) motion—a low standard." *Id.* at 1203.

*Alas v. AT&T Servs.*, No. 217CV8106VAPRAOX, 2021 WL 4893372 (C.D. Cal. Sept. 28, 2021) supports *Appellees'* position by reaffirming the holding in *Thole*: defined benefit plan participant/plaintiffs must demonstrate injury-in-fact to establish Article III standing. Defendants in *Alas* were defined *contribution* plan fiduciaries (as opposed to defined benefit plan fiduciaries). *Id.* at *1. Plaintiffs sought injunctive relief regarding defendants' alleged failure to report a plan service provider's compensation accurately on the required annual Form 5500. *Id.* at *12. Defendants argued that plaintiffs lacked Article III standing to seek injunctive relief under *Thole*, because they failed to show a concrete injury in connection with the alleged Form 5500 reporting errors. *Id.* The court rejected this argument, holding that "*Thole* is distinguishable from the present case because *Thole's* reasoning does not apply to defined-contribution plans." *Id.* at *13. The court reasoned that, "unlike in the defined-benefit plan at issue in *Thole*, the benefits in a defined-contribution plan 'are typically tied to the value of their accounts, and the benefits *can* turn on the plan fiduciaries' particular investment decisions.'" *Id.* (citation omitted, emphasis original).

In the district court case *Wells v. California Physicians' Serv.*, No. C05-01229CRB, 2007 WL926490, at *2 (N.D. Cal. Mar. 26, 2007) plaintiff sought injunctive relief in connection with alleged fiduciary breaches by defendant in its claims handling process. Plaintiff alleged that his wife died because of improper delays by defendant in approving her cancer treatment. *Id.* at *1. The district court held that plaintiff did not need to demonstrate individual injury because he sought "only injunctive relief wholly unrelated to any monetary loss." *Id.* at *5. But

anticipating this Court's later analysis in *Patel* and *Wit*, and their reaffirmation that the law requires a concrete injury-in-fact to establish standing, the court noted: "... it bears emphasis that there is a concrete case or controversy here. Plaintiff is not a random member of the Plan who decided to sue Defendant for no reason; instead, he is seeking injunctive relief to correct alleged ERISA violations that led, in his view, to the premature death of his wife." *Id.* at *6. By contrast, Appellants have no concrete stake in this case because it is undisputed that any benefits owed to eligible participants have been paid, and the Plan is not at any risk of default.

The out-of-circuit cases cited by Appellants are non-binding, pre-date *Spokeo, Patel* and *Wit* and, to the degree they are at odds with those cases, should be disregarded. But they are distinguishable on other grounds as well. For instance, in *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 450 (3d Cir. 2003), a member of a health maintenance organization ("HMO") brought a putative class action against the HMO alleging fiduciary breaches under ERISA in connection with the HMO's alleged failure to disclose details of cost-control incentives offered to participating physicians. Although the court held that plaintiff need not demonstrate actual injury to seek injunctive relief, it rejected plaintiff's requests for restitution and disgorgement on the ground that they were individual in nature, and therefore required plaintiff to demonstrate individual loss to satisfy Article III standing. *Id.* at 456. *Accord, Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199-200 (2d Cir. 2005) (quoting *Horvath* and holding that requests for restitution or disgorgement require a showing of individual loss).

In the instant case, Appellants seek monetary relief in connection with both of their claims. But even if (1) the Court considers their argument despite it being raised for the first time on appeal, and (2) their Complaint may also be interpreted to seek equitable relief, they have failed to establish either that the Plan does not

adhere to the "meaningful benefit" rule, or that they have any private right of action even if it did not.

## V.    CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.


DATED:      January 5, 2023          TRUCKER ✦ HUSS, APC


                                     /s/ *Joseph C. Faucher*
                                     JOSEPH C. FAUCHER
                                     Attorneys for Appellees
                                     WESTCO CHEMICALS, INC.;
                                     ALAN ZWILLINGER, erroneously sued
                                     as Ezekiel Alan Zwillinger; and STEVEN
                                     ZWILLINGER

## STATEMENT OF RELATED CASES

There are no related cases pending in the Ninth Circuit Court of Appeals.

DATED:     January 5, 2023          TRUCKER ✦ HUSS, APC


/s/ *Joseph C. Faucher*
JOSEPH C. FAUCHER
Attorneys for Appellees
WESTCO CHEMICALS, INC.;
ALAN ZWILLINGER, erroneously sued
as Ezekiel Alan Zwillinger; and STEVEN
ZWILLINGER

38

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 22-55823

I am the attorney for Appellees Westco Chemicals, Inc., Alan Zwillinger and Steven Zwillinger.

**This brief contains 10,112 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:**  /s/ *Joseph C. Faucher*         **Date:**  January 5, 2023

39

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 5, 2023          TRUCKER ✦ HUSS, APC

*/s/ Joseph C. Faucher*
Attorneys for Appellees
WESTCO CHEMICALS, INC.;
ALAN ZWILLINGER, erroneously sued
as Ezekiel Alan Zwillinger; and STEVEN
ZWILLINGER